# CHARLESTON.

HURXTHAL v. ST. LAWERENCE BOOM & MFG. CO.

Submitted September 10, 1908. Decided March 23, 1909.

1. NEW TRIAL—*Grounds—Verdict on Conflicting Evidence.*
   A verdict depending wholly on conflicting oral testimony of witnesses in the presence of the jury will not be set aside on

the sole ground that it is against the weight and preponderance of such evidence. The jury's province to judge the credibility of such witnesses cannot be so invaded. (p. 348.)

2. DAMAGES—*Measure—Breach of Contract—Contract to Furnish Water Power.*

In the ascertainment of damages to a mill because of the breach of a contract to maintain dams and do other things affording a supply of water essential to its operation, an appropriate standard is the rental value of the mill under conditions that would have existed had the contract been kept as compared with the rental value when the contract was not kept. (p. 349.)

3. EVIDENCE—*Opinion Evidence—Amount of Damages.*

In such case, the opinion of witnesses acquainted with the premises is admissible as to the amount of damages judged by the standard of rental value. (p. 349.)

4. DAMAGES—*Evidence—Sufficiency.*

In the ascertainment of damages absolute certainty is not required. The causes and probable amount of the loss may be shown with reasonable certainty. Substantial damages may be recovered though the loss can be stated only approximately. (p. 352.)

5. SAME.

A verdict for damages cannot be set aside upon the ground that the evidence afforded no basis for ascertainment of its amount when the facts, circumstances and data justify the inference that the amount found is a just and reasonable compensation for the injury suffered. (p. 353.)

[WILLIAMS, JUDGE, absent.]

Error to Circuit Court, Greenbrier County,

Action by Josie M. Hurxthal against the St. Lawerence Boom & Manufacturing Company. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

JOHN W. HARRIS, HENRY GILMER, J. A. PRESTON, and H. L. VAN SICKLER, for plaintiff in error.

WILLIAMS & DICE, for defendant in error.

ROBINSON, JUDGE:

This writ of error is a sequel to the decision of the case reported in 53 W. Va. 87. An understanding of the facts is there disclosed. After that reversal, a new suit on the same cause of action was instituted. It was later consolidated with

·the old suit, by agreement, it seems. Trial of the case resulted in a verdict in favor of plaintiff for $2500. Upon that verdict, judgment was rendered over the motion of defendant to set aside the same and award a new trial. The defendant has brought the case here. It assigns as error the giving of certain instructions to the jury and the court's refusal to set aside the verdict as being contrary to law and the evidence. By a decision of this Court on November 26, 1907, the judgment was affirmed. But a rehearing was granted upon the petition of defendant. The case was reargued, and a thorough review of it has since been made.

That review leads us unalterably to the opinion that the former conclusion is right. We find no error in the instructions. They embody law applicable to the case as presented. Nor is it true that plaintiff's cause of action is unsupported by the evidence. That cause of action is the alleged damage to plaintiff's mill by reason of the failure of defendant to perform the contract by which it was obligated to maintain dams and do other things essential to the furnishing of a water supply for the operation of that mill. That contract is clear and specific; and from the whole of the evidence adduced the jury were justified in believing that it was not fulfilled by defendant and that plaintiff's injury arose from such default. Were the dams maintained and other things done by defendant to the extent stipulated in the contract? If not, did the failure of defendant to perform its obligations under that contract injure plaintiff's mill? These simple questions embrace that which the jury had for determination as to the fact of damage and the cause thereof. They are answered by the verdict against defendant. Neither is it conclusively shown that plaintiff's own negligence caused the damage or contributed thereto. The jury were the judges in this regard also. Granting the evidence to be conflicting in the particulars aforesaid, we cannot say that the finding, of the jury is unfounded. The finding, in its relation to these particulars, depending, as it does, on oral testimony and the credibility of witnesses, cannot be disturbed. It is not against the decided weight and preponderance of the evidence. It is not manifestly wrong. There is no preponderance for plaintiff, it is said. If such be true, it cannot avail to disturb the verdict; for, as held in *Coalmer* v. *Barrett,* 61 W. Va. 237,

"A doubtful case, a slight weight and preponderance of the evidence against the verdict, is not sufficient cause for setting it aside." And it would seem unncessary to reiterate the well-known rule plainly stated in that case, that "a verdict depending solely on conflicting oral evidence given by witnesses in the presence of the jury will not be set aside on the ground alone that the verdict is plainly against the decided weight and preponderance of such evidence, because to do so would invade the province of the jury in determining the credibility of such witnesses."

This brings us, then, to the really controverted feature of the case. It is the feature most strongly relied upon by defendant, and, in fact, the only one pressed in the argument upon this rehearing. It is this: Is there in the evidence a basis for ascertainment of the amount of damages? It is insisted that there is nothing upon which the jury could arrive at the amount of $2500, or any other amount; in other words, that no money value of damages was proved. We find otherwise. An appropriate standard for the ascertainment of damages in such case is the rental value of the mill had the defendant kept its said contract as compared with its rental value when that contract was not kept. *Pickens* v. *Boom & Timber Co.,* 51 W. Va. 445; *Woodin* v. *Wentworth,* 57 Mich. 278; *Winne* v. *Kelley,* 34 Ia. 339; *Rogers* v. *Bemus,* 69 Pa. St. 432. True, in a case of this kind a party is not confined to a single mode of measurement for estimating his damages; but rental value is a certain measure. It is a surer criterion than the evidence of lost profits. Counsel on both sides concede that rental value of the mill under conditions when the contract was kept as compared with rental value under conditions when it was not kept was a proper basis for ascertainment of the amount of the damages sustained by plaintiff. But for defendant it is insisted that there is no evidence in the case to which this principle can be applied; that there are no certain or proper data of rental value. Yet we find absolute and specific statements by witnesses as to what the rental value of the mill was under each of the conditions aforesaid. Moreover, it is significant that not a word was offered in contradiction of these statements. Therefore, they stand proved. Plaintiff bought the mill, and took with it the rights under defendant's said

contract, on March 16, 1899. In May of that year she rented
it to Pierpont and Ammonnette, at $1000 for the first year,
$1200 for the second, and $1400 for the third year. On Jan-
uary 2, 1900, she took back the mill from her lessees, com-
pelled to do so, it is shown, because of threats, on the part of
those lessees, to sue her on account of an insufficient water
supply—for the same insufficient water supply which plaintiff
insists came about by defendant's breach of its obligations. Yet
plaintiff testifies that with water anyone would have given from
$1800 to $2000 per year rental for the mill, and that she would
not have rented it for that amount if there had been a sufficient
water supply. Two other witnesses, peculiarly competent to
speak in that behalf because of intimate acquaintance with the
property and its milling business, also state what the rental
value would have been had the water been furnished. And the
evidence, though conflicting, justified the jury in believing that
the water supply would have been sufficient had defendant
kept its contract. White, who bid on the mill at judicial sale
when plaintiff bought it and who afterwards purchased it from
her, says that from $1500 to $1800 per year "would have been
right." Ammonnette, one of the aforesaid lessees, plaintiff's
miller during this very time, puts the rental value at $2000
per year, provided the water supply had been good. What
do these witnesses say on the other hand? What do they say
the mill was worth during the period for which damage is
claimed? Plaintiff says that during the latter part of her
ownership she did not make anything, but that she got in debt.
One can understand, by natural sense, how delay and stoppage
in the operation of a valuable mill, with a miller employed at
$75 per month and other large expenses, continuing despite
said stoppage, would destroy the usual profit in such business.
Plaintiff says she thinks that she could not have rented it at
any price, because of the conditions brought about by the breaches
of defendant. The jury, as we have said, could find that there
were such breaches, and that by them plaintiff was injured.
White says that he would not consider the rental value "very
much on account of water" and that "the annoyance to anyone
who owned it was about all it was worth." Yet he says that
there was nothing the matter with the mill itself. Ammonnette
says that taking into consideration the water supply the mill had

no rental value. True, the mill did run at times, but from this evidence must it not be known that it did not run with profit? Surely it was competent for the jury to ascertain the amount of damages from such evidence as all this. Plainly, by it, there was before the jury the fact that because of defendant's violations of the contract, the mill possessed no annual rental value; and just as plainly was it proved that under conditions such as would have prevailed had the contract not been violated the rental value of the mill would have been from $1500 to $2000 per year. Would not reasonable men then be able easily to compute the amount of the loss caused by defendant? The jury had before them the evidence as to length of the period during which the breaches were made. That period of time covered a space of two years, nine months and one day. We must not suppose that the jury could not make a computation upon such a plain arithmetical problem. The verdict is within any result obtainable by such computation. "The jury are the judges of the compensation to be paid in case of wrongful damage to real property, and the court will not disturb their finding unless plainly unwarranted by the evidence." *Miller* v. *Shenandoah Pulp Co.,* 38 W. Va. 558.

It is complained that the aforesaid measure of damage by comparison of the rental value under the different conditions of the property is based on mere opinions of the witnesses. But those witnesses were acquainted with the property and the business, and were competent to give opinions in that regard. Such evidence is proper in ascertaining damages. "It is the settled law of this state that the opinions of witnesses are admissible as to the amount of damages done in cases of this character, to enable the jury to arrive at a just verdict; and, while the jury are not bound by these opinions, they have the right to give them such weight as, taken together with other evidence, is justifiable." *Miller* v. *Shenandoah Pulp Co., supra; Railroad Co.* v. *Forman,* 24 W. Va. 662. That which was said by Judge BRANNON in *Pickens* v. *Boom & Timber Co.,* 58 W. Va. 11, is pertinent here: "Witnesses acquainted with the mill, practical millers, were permitted to give rental value and the earning capacity daily. Why do not these constitute a basis for estimation of damages, in connection with evidence of the number of days of stoppage, which was given for some months?" And this

Court has held: "In an action for damages for diverting water it is proper to ask a witness to state from facts within his knowledge what in his opinion was the amount of damages suffered by the plaintiff because of such diversion of the water; and to authorize the giving of such opinion it is not necessary that the party be an expert." *Hargreaves* v. *Kimberly,* 26 W. Va. 787. In other words, laconic ones from the West, "It is not necessary to be an expert horse dealer to have some judgment as to the value of a horse." *Johnson* v. *Railway Co.,* 7 Utah 351.

In the evidence above recited, concerning the matter of rental value, there is more than the usual certainty of proof in like cases. In the ascertainment of damages absolute certainty is not required. The causes and probable amount of the loss may be shown with reasonable certainty. Substantial damages may be recovered though the plaintiff can state his loss only approximately. Hale on Damages, page 70; Sedgwick on Damages, § 171; Joyce on Damages, § 75. And the language of a court of high standing is in point: "The law does not require impossibilities; and cannot therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Allison* v. *Chandler,* 11 Mich. 542. Nor is the evidence on which the jury herein acted objectionable as a basis for finding the amount of a verdict because the witnesses aforesaid differed in their opinions as to the rental value or that they stated that value approximately. In a case growing out of a cause of action not wholly dissimilar to this one, and very similar as to character and extent of evidence, it was said: "We think it unsafe, in a case like the present, to approve a ruling which rejects a claim to damage, otherwise lawful and unexceptionable, on the ground that the

party could only state the amount of his injury approximately, and his witnesses differed in their judgment." *Satchwell* v. *Williams,* 40 Conn. 371. Recovery in this case is not based on guess-work or inference, but is supported by facts, circumstances and data justifying the inference that the damages awarded are a just and reasonable compensation for the injuries suffered. 13 Cyc. 218.

Because plaintiff rented her mill at the figures set forth in said lease, defendant contends that the other figures given by the witnesses aforesaid are overthrown. But from the evidence and circumstances the jury were justified in believing that such contract of rental was made by her because of the bad condition of the water supply. The contract of rental does prove that the property had rental value but for the insufficiency of the supply of water. The lease was actually made and existed until the deficient supply caused its surrender. We cannot assume that it would have been surrendered for other reasons had this reason not arisen. Is not this renting at fixed figures, at the inception of plaintiff's ownership, before the breaches of defendant had become notorious to the lessees, substantial proof of what the property could be rented for under normal conditions? Let us take the figures of that lease as a basis. The jury may have done so. Those figures are the ones most favorable to the defendant. And yet the verdict found is within them. Under this contract of rental, as we have stated, plaintiff was to receive $1000 for the first year, $1200 for the second, and $1400 for the third year. That rental lasted about seven and a half months of the first year. This netted plaintiff $625, if the rent was paid. Because of the surrender, which the evidence says was occasioned by defendant's acts, plaintiff lost the residue of the rent for the first year, or $375. The next year she lost $1200, and for the nine months of the third year that she owned the property she lost three-fourths of $1400, or $1050. So the total of the loss because of the compelled surrender of the lease amounted to $2625. Assuming that the jury believed, as the evidence warrants, that the defendant's acts caused the loss of this lease after it had existed for seven and a half months, was it not a substantial and certain basis for computation of the damages, and is not the amount of $2500 only a little under that actually proved? Certainly it cannot be said that such basis was

uncertain, that the proof was deficient, nor can it be said that the computation thereupon was erroneous or excessive.

There has been a fair trial of the case. The verdict is not manifestly wrong. The judgment is affirmed.

*Affirmed.*